# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARK SMITH, on behalf of himself and all others similarly situated, | |
| Plaintiff, | CIVIL ACTION |
| v. | Case No. 3:17-cv-06668 |
| SPECIALIZED LOAN SERVICING, LLC, AMERICAN SECURITY INSURANCE COMPANY, STANDARD GUARANTY INSURANCE COMPANY, and VOYAGER INDEMNITY INSURANCE COMPANY, | Judge Brian R. Martinotti |
| | Magistrate Judge Douglas E. Arpert |
| Defendants. | |

## ORDER GRANTING FINAL APPROVAL TO
## CLASS ACTION SETTLEMENT

On October 31, 2018, this Court granted preliminary approval to the proposed class action settlement set forth in the Stipulation and Settlement Agreement (the "Settlement Agreement") between Plaintiff Mark Smith, on behalf of himself and all Settlement Class Members as defined herein, Specialized Loan Servicing, LLC ("SLS"), and American Security Insurance Company ("ASIC"), Standard Guaranty Insurance Company ("SGIC"), Voyager Indemnity Insurance Company ("VIIC") (ASIC, SGIC, and VIIC are collectively referred to herein as the "Assurant Defendants"). The Court also provisionally certified the Settlement Class for settlement purposes, approved the procedure for giving Class Notice to the members of the Settlement Class, and set a Final Approval Hearing to take place on April 1, 2019 at 10:00 a.m. Having conducted that Hearing, the Court finds that the Class Notice substantially in the form approved by the Court in

its Preliminary Approval Order was given in the manner ordered by the Court, constituted the best practicable notice, and was fair, reasonable, and adequate.

On April 1, 2019 at 10:00 a.m., the Court held a duly noticed Final Approval Hearing to consider: (1) whether the terms and conditions of the Settlement Agreement are fair, reasonable and adequate; (2) whether a judgment should be entered dismissing the Named Plaintiff's amended complaint on the merits and with prejudice in favor of the Defendants and against all persons or entities who are Settlement Class Members herein who have not requested exclusion from the Settlement Class; and (3) whether and in what amount to award Attorneys' Fees and Expenses to Class Counsel for the Settlement Class and whether and in what amount to award a Case Contribution Award to the Named Plaintiff.

NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

1. The Court has personal jurisdiction over the parties and the Settlement Class Members, venue is proper, the Court has subject matter jurisdiction to approve the Settlement Agreement, including all exhibits thereto, and to enter this Final Order.

2. The Settlement Agreement was negotiated at arm's length by experienced counsel who were fully informed of the facts and circumstances of this litigation (the "Smith Litigation" or the "Litigation") and of the strengths and weaknesses of their respective positions. Counsel for the Parties were therefore well positioned to evaluate the benefits of the Settlement Agreement, taking into account the expense, risk, and uncertainty of protracted litigation with respect to numerous difficult questions of fact and law.

3. The Court finds that the prerequisites for a class action under Fed. R. Civ. P. 23(a) and Fed. R. Civ. P. 23(b) have been satisfied for settlement purposes for each Settlement Class Member in that: (a) the number of Settlement Class Members is so numerous that joinder of all

members thereof is impracticable; (b) there are questions of law and fact common to the Settlement Class; (c) the claims of the Named Plaintiff are typical of the claims of the Settlement Class they seek to represent; (d) Named Plaintiff has and will continue to fairly and adequately represent the interests of the Settlement Class for purposes of entering into the Settlement Agreement; (e) the questions of law and fact common to the Settlement Class Members predominate over any questions affecting any individual Settlement Class Member; (f) the Settlement Class is ascertainable; and (g) a class action settlement is superior to the other available methods for the fair and efficient adjudication of the controversy.

4. Pursuant to Fed. R. Civ. P. 23, this Court hereby finally certifies the Settlement Class, as identified in the Settlement Agreement, which shall consist of the following:

> All borrowers in the United States who, within the Settlement Class Period (as defined below), were charged by SLS under a hazard, flood, flood gap or wind-only LPI Policy for Residential Property, and who, within the Settlement Class Period, either (i) paid to SLS at least a portion of the Net Premium for that LPI Policy or (ii) did not pay to SLS and still owe the Net Premium for that LPI Policy. Excluded from the Settlement Class are: (i) individuals who are or were during the Settlement Class Period officers or directors of the Defendants or any of their respective affiliates; (ii) any justice, judge, or magistrate judge of the United States or any State, their spouses, and persons within the third degree of relationship to either of them, or the spouses of such persons; (iii) borrowers who only had an LPI Policy that was cancelled in its entirety such that any premiums charged and/or collected were fully refunded to the borrower or the borrower's escrow account; (iv) borrowers who, since the issuance of the LPI Policy, filed a Petition under Chapter 7 of the United States Bankruptcy Code that compromised or discharged indebtedness on their Residential Property secured by their security instrument; and, (v) all borrowers who file a timely and proper request to be excluded from the Settlement Class.

> The "Settlement Class Period" shall commence on January 1, 2011, and shall continue through and including October 31, 2018.

5. The Court finally appoints The Moskowitz Law Firm, PLLC as Class Counsel for the Settlement Class.

6. The Court finally designates Named Plaintiff Mark Smith as the Settlement Class Representative.

7. The Court makes the following findings on notice to the Settlement Class:

(a) The Court finds that the Class Notice, including distribution of the Mail Notice, Publication and Internet advertising, the creation of the IVR toll-free telephone number system, and creation of the Settlement Website, all as provided for in the Settlement Agreement and Preliminary Approval Order, (i) constituted the best practicable notice under the circumstances to Settlement Class Members, (ii) constituted notice that was reasonably calculated, under the circumstances, to apprise Settlement Class Members of the pendency of the Litigaiton, their right to object or to exclude themselves from the proposed Settlement, and their right to appear at the Final Approval Hearing, (iii) was reasonable and constituted due, adequate, and sufficient notice to all persons entitled to be provided with notice, and (iv) complied fully with the requirements of Fed. R. Civ. P. 23, the United States Constitution, the Rules of this Court, and any other applicable law. The Parties have complied with their notice obligations under the Class Action Fairness Act, 28 U.S.C. § 1715, in connection with the Settlement.

(b) The Court finds that the Class Notice and methodology set forth in the Settlement Agreement, the Preliminary Approval Order, and this Final Order (i) constitute the most effective and practicable notice of the Final Order, the relief available to Settlement Class Members pursuant to the Final Order, and applicable time periods; (ii) constitute due, adequate, and sufficient notice for all other purposes to all Settlement Class Members; and (iii) comply fully with the requirements of Fed. R. Civ. P. 23, the United States Constitution, the Rules of this Court, and any other applicable law.

8. The Settlement Agreement is finally approved as fair, reasonable, and adequate pursuant to Fed. R. Civ. P. 23(e). The terms and provisions of the Settlement Agreement, including all exhibits thereto, have been entered into in good faith and are hereby fully and finally approved

10R4309

4

as fair, reasonable, and adequate as to, and in the best interests of, each of the Parties and the Settlement Class Members.

9. The Parties are hereby directed to implement and consummate the Settlement Agreement according to its terms and provisions.

10. Pursuant to Fed. R. Civ. P. 23(h), the Court hereby awards Class Counsel for the Settlement Class Attorneys' Fees and Expenses in the amount of $1,279,480.00 payable pursuant to the terms of the Settlement Agreement. The Court also awards Case Contribution Awards in the amount of $5,000.00 to the Named Plaintiff Mark Smith payable pursuant to the terms of the Settlement Agreement.

11. The terms of the Settlement Agreement and of this Final Order, including all exhibits thereto, shall be forever binding in all pending and future lawsuits maintained by the Named Plaintiff and all other Settlement Class Members, and their family members, administrators, executors, representatives, guardians, wards, heirs, estates, bankruptcy estates, bankruptcy trustees, successors, predecessors, joint tenants, tenants in common, tenants by the entirety, co-mortgagors, co-obligors, co-debtors, attorneys, agents and assigns, and all those who claim through them or who assert claims (or could assert claims) on their behalf.

12. The Releases, which are set forth in Section 10 of the Settlement Agreement and which are also set forth below, are expressly incorporated herein in all respects and are effective as of the date of this Final Order; and the Released Persons (as that term is defined below and in the Settlement Agreement) are forever released, relinquished, and discharged by the Releasing Persons (as that term is defined below and in the Settlement Agreement) from all Released Claims (as that term is defined below and in the Settlement Agreement).

(a) Release and Waiver Definitions

(i) "SLS" means Specialized Loan Servicing, LLC, and its predecessors and successors, and all of its affiliates, including SLS's internal units, such as its mortgage lending department and direct retail lending department.

(ii) "Affiliate" of an entity means any person or entity which controls, is controlled by, or is under common control with such entity.

(iii) "Assurant Defendants" means American Security Insurance Company, Standard Guaranty Insurance Company, and Voyager Indemnity Insurance Company.

(iv) "Defendants" means all named defendants in the Smith Litigation, including SLS and the Assurant Defendants.

(v) "Lender-Placed Insurance" means the placement of hazard, flood, flood gap, or wind-only insurance pursuant to a mortgage loan agreement, home equity loan agreement, or home equity line of credit serviced by SLS to cover a borrower's failure to maintain the required insurance coverage on the Residential property securing the loan.

(vi) "LPI Policy" means a lender-placed residential hazard, flood, flood gap or wind-only insurance policy or policies issued by American Security Insurance Company ("ASIC"), Standard Guaranty Insurance Company ("SGIC"), Voyager Indemnity Insurance Company ("VIIC"), or another insurance company, and placed pursuant to a mortgage loan agreement, home equity loan agreement, or home equity line of credit serviced by SLS to cover a borrower's failure to maintain the required insurance coverage on the residential property securing the loan.

(vii) "Release" or "Releases" means the releases of all Released Claims by the Releasing Persons against the Released Persons.

(viii) "Released Claims" means all claims, actions, causes of action, suits, debts, sums of money, payments, obligations, reckonings, promises, damages, penalties, attorney's fees and costs, liens, judgments, demands, and any other forms of liability released pursuant to this Final Order and Judgment and Section 10 of the Settlement Agreement.

(ix) "Released Persons" means, only with respect to Released Claims: (a) all Defendants, and Assurant, Inc., and each of their respective past or present, direct or indirect, Affiliates, parent companies, subsidiaries, divisions, predecessors, successors, assigns, investors, and all past or present officers, directors, employees, agents, brokers, distributors, representatives, and attorneys of any such entities or persons; (b) any other insurance carriers that issued or may have issued LPI for SLS insuring real property owned by a Settlement Class Member; and (c) any trustee of a mortgage securitization trust which included loans made to any Settlement Class Member, including, but not limited to, any direct or indirect subsidiary of any of them, and all of the officers, directors, employees, agents, brokers, distributors, representatives, and attorneys of all such entities.

(x) "Releasing Persons" means Named Plaintiff and all Settlement Class Members who do not properly and timely opt out of the Settlement, and their respective family members, administrators, executors, representatives, guardians, wards, heirs, estates, bankruptcy estates, bankruptcy trustees, successors, predecessors, joint tenants, tenants in common, tenants by the entirety, co-mortgagors, co-obligors, co-debtors, attorneys, agents and assigns, and all those who claim through them or who assert claims (or could assert claims) on their behalf.

(xi) "Settling Parties" means, collectively, Defendants, Named Plaintiff, and all Releasing Persons.

10R4309

7

(b) <u>Released Claims</u>. Each Releasing Person shall, by operation of this Final Order and the Judgment, be deemed to have fully, conclusively, irrevocably, forever, and finally released, relinquished, and discharged the Released Persons from any and all claims, actions, causes of action, suits, debts, sums of money, payments, obligations, reckonings, promises, damages, penalties, attorney's fees and costs, liens, judgments, and demands of any kind whatsoever that each Releasing Person may have until the close of the Settlement Class Period or may have had in the past, whether in arbitration, administrative, or judicial proceedings, whether as individual claims or as claims asserted on a class basis, whether past or present, mature or not yet mature, known or unknown, suspected or unsuspected, whether based on federal, state, or local law, statute, ordinance, regulations, contract, common law, or any other source, that were or could have been sought or alleged in the Litigation or that relate, concern, arise from, or pertain in any way to the Released Persons' conduct, policies, or practices concerning SLS's placement, or the Assurant Defendants' issuance, of LPI Policies or to the receipt or disclosure or nodisclosure of charges related to the advanching of Premiums during the Settlement Class Period, the contractual relationship between SLS and the other Released Parties; and the conduct, policies or practices concerning LPI Policies or to charges for SLS's Placement of LPI Policies during the Settlement Class Period. In agreeing to this Release, Named Plaintiff explicitly acknowledge that unknown losses or claims could possibly exist and that any present losses may have been underestimated in amount or severity.

(i) The Release stated in Paragraph 12(b) above shall include, but not be limited to, all claims related to SLS's insurance requirements; the relationship, whether contractual or otherwise, between SLS and the Assurant Defendants, including, but not limited to, the procuring, underwriting, placement, insurance tracking, or costs of LPI Policies; the coverage

10R4309     8

amount, duration, issue date, "backdating" or alleged excessiveness of any LPI Policies placed or charged by SLS; the payment or receipt of commissions, expense reimbursements, alleged "kickbacks," or any other compensation under any LPI Policies placed or charged by SLS; any alleged tortious interference by the Assurant Defendants with mortgage loans serviced by SLS; the receipt or disclosure or non-disclosure of any payments, expenses, fees, finance charges, or other charges, or features pertaining in any way to, in connection with, or under any LPI Policies or coverage under such LPI Policies and charges for such coverage placed or charged by SLS; the receipt or non-disclosure of any benefit under any LPI Policies or coverage under such LPI Policies and charges for such coverage placed or charged by SLS; the content, manner, or accuracy of any communications regarding the placement of any LPI Policies by SLS; and to the regulatory approval or non-approval of any LPI Policy, or the premium thereon, placed or charged by SLS. Each Releasing Person shall be considered, by operation of the Final Judgment, to have received full and final redress, including but not limited to any refund, reimbursement, restitution, or damages for the conduct covered by the release.

      (ii) The Release in Paragraph 12(b) above shall not cover claims arising after the close of the Settlement Class Period, nor insurance claims for losses relating to properties insured under any LPI Policy placed or charged for by SLS. Nothing in Paragraph 12(b) shall be deemed a release of any Releasing Person's respective rights and obligations under this Agreement. Further, nothing in Paragraph 12(b), or any other provision of the Stipulation and Settlement Agreement, shall be deemed a release of claims by borrowers who were charged for LPI that was purchased by mortgage servicers other than SLS.

      (iii) Except to the extent that any such obligation is being released pursuant to Paragraph 12(b) above, this Final Order and the Judgment shall not be deemed a release

of Defendants from any existing obligation to any Releasing Person under any loan, note, mortgage, or deed of trust. This provision is not meant to and does not limit the Releases in this Final Order or in the Settlement Agreement.

(c) The Named Plaintiff and Class Counsel further represent that there are no outstanding liens or claims against the Smith Litigation, it being recognized that the Named Plaintiff will solely be charged with the responsibility to satisfy any other liens or claims asserted against the Smith Litigation.

(d) Without in any way limiting their scope, the Releases cover by example and without limitation, any and all claims for attorneys' fees, costs, expert fees, or consultant fees, interest, or litigation fees, or any other fees, costs, and/or disbursements incurred by Class Counsel, the Named Plaintiff, or any Releasing Person in connection with or related in any manner to the Smith Litigation, the settlement of the Smith Litigation, the administration of such Settlement, and/or the Released Claims, except to the extent otherwise specified in the Settlement Agreement.

(e) In connection with the foregoing Releases, the Named Plaintiff and each Releasing Person expressly waive, and shall be deemed to have waived to the fullest extent permitted by law, any and all provisions, rights, or benefits conferred by Section 1542 of the California Civil Code, and any statute, rule and legal doctrine similar, comparable, or equivalent to California Civil Code Section 1542, which provides that:

> **A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.**

To the extent that anyone might argue that these principles of law are applicable—notwithstanding that the Settling Parties have chosen New Jersey law to govern this Settlement Agreement—the Named Plaintiff hereby agrees, and each Releasing Person will be deemed to

agree, that the provisions of all such principles of law or similar federal or state laws, rights, rules, or legal principles, to the extent they are found to be applicable herein, are hereby knowingly and voluntarily waived, relinquished, and released. The Named Plaintiff recognizes, and each Releasing Person will be deemed to recognize, that, even if they may later discover facts in addition to or different from those which they now know or believe to be true, they nevertheless agree that, upon entry of the Final Order and Judgment, they fully, finally, and forever settle and release any and all Released Claims.

(f) The Releases were bargained for and are a material element of the Settlement Agreement.

(g) The Releases do not affect the rights of Settlement Class Members who timely and properly submitted a Request for Exclusion from the Settlement in accordance with the requirements of the Preliminary Approval Order and in Section 11 of the Settlement Agreement.

(h) The administration and consummation of the Settlement as embodied in the Settlement Agreement shall be under the authority of the Court.

(i) The Settlement Agreement shall be the exclusive remedy for any and all Releasing Persons, , and the Released Persons shall not be subject to liability or expense for any of the Released Claims to any Releasing Persons.

(j) The Releases shall not preclude any action to enforce the terms of the Settlement Agreement, including participation in any of the processes detailed therein. The Releases set forth herein and in the Settlement Agreement are not intended to include the release of any rights or duties of the Settling Parties arising out of the Settlement Agreement, including the express warranties and covenants contained herein.

13. Neither the Settlement Agreement, nor any of its terms and provisions, nor any of the negotiations or proceedings connected with it, nor any of the documents or statements referred to therein, nor this Final Order, nor any of its terms and provisions, nor the Judgment to be entered pursuant to this Final Order, nor any of its terms and provisions, shall be:

(a) offered by any person or received against the Defendants as evidence or construed as or deemed to be evidence of any presumption, concession, or admission by the Defendants of the truth of the facts alleged by any person or the validity of any claim that has been or could have been asserted in the Smith Litigation or in any litigation, or other judicial or administrative proceeding, or the deficiency of any defense that has been or could have been asserted in the Litigation or in any litigation, or of any liability, negligence, fault or wrongdoing of the Defendants;

(b) offered by any person or received against the Defendants as evidence of a presumption, concession, or admission of any fault, misrepresentation, or omission with respect to any statement or written document approved or made by the Defendants or any other wrongdoing by the Defendants;

(c) offered by any person or received against the Defendants as evidence of a presumption, concession, or admission with respect to any liability, negligence, fault, or wrongdoing in any civil, criminal, or administrative action or proceeding;

(d) offered or received in evidence in any action or proceeding against any Party hereto in any court, administrative agency, or other tribunal for any purpose whatsoever, other than to enforce or otherwise effectuate the Settlement Agreement (or any agreement or order relating thereto), including the Releases, or the Final Order, or the Judgment to be entered pursuant to this Final Order.

14. This Final Order, the Judgment to be entered pursuant to this Final Order, and the Settlement Agreement (including the exhibits thereto) may be filed in any action against or by any Released Person (as that term is defined herein and the Settlement Agreement) to support a defense of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any theory of claim preclusion or issue preclusion or similar defense or counterclaim.

15. Without further order of the Court, the Settling Parties may agree to reasonably necessary extensions of time to carry out any of the provisions of the Settlement Agreement.

16. This Final Order, and the Judgment to be entered pursuant to this Final Order, shall be effective upon entry. In the event that the Final Order and the Judgment to be entered pursuant to this Final Order are reversed or vacated pursuant to a direct appeal in this Litigation or the Settlement Agreement is terminated pursuant to its terms, all orders entered and releases delivered in connection herewith shall be null and void.

17. A final judgment substantially in the form attached hereto as Exhibit F-1 will be entered forthwith.

DONE and ORDERED in Chambers in Trenton, New Jersey, this __1st__ day of __April__, 2019

_____
BRIAN MARTINOTTI
UNITED STATES DISTRICT JUDGE